```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-19-11
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
JANE KAUPP,                         :
                                    :
                    Plaintiff,      :
                                    :         No. 10 Civ. 7559 (JFK)
     -against-                      :
                                    :         Opinion & Order
JOHN CHURCH and JUST MARKETING,INC. :
Individually and doing business as  :
JUST MARKETING INTERNATIONAL,       :
                                    :
                    Defendants.     :
-----------------------------------X

APPEARANCES

David A. Brodsky, Greenwald Law Offices, for Plaintiff.

Gary Meyerhoff, SNR Denton LLP, for Defendant.

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant Just Marketing

International's ("JMI" or "Defendant") motion to dismiss the

Second Amended Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure in this diversity of

citizenship case.  For the reasons that follow, the motion to

dismiss is granted.

                      **I.  Background**

    Plaintiff Jane Kaupp ("Kaupp" or "Plaintiff") asserts that,

after ending her two-and-a-half year extramarital relationship

with Defendant John Church ("Church") in June 2010, Church

commenced stalking and threatening her through harassing phone

calls, texts and emails. (Am. Compl. ¶¶ 10, 11).  According to

Kaupp, Church, while employed at JMI, called her hundreds of times – in one instance, 110 times in one morning – and would either hang up or leave a threatening message. (Id. ¶ 11). Additionally, Church reportedly called Kaupp's ten-year-old son and other family members, babysitter, and co-workers. (Id. ¶¶ 11, 37). As a result of the alleged harassment, Kaupp eventually sought psychiatric counseling for sleeplessness, nausea, vomiting, and fear. (Id. ¶ 49).

Kaupp maintains that JMI "knowingly and actively participated, and aided and abetted, in Defendant Church's pattern of harassment against Plaintiff and her family . . . ." (Pl. Mem. at 2). Some of Church's contact with Kaupp was undertaken using JMI facilities:  Church made threatening phone calls from his JMI office and used his JMI email address to send harassing emails. (Am. Compl. ¶¶ 25, 42, 43). Kaupp alleges that JMI was aware of this conduct and failed to stop it. Further, Kaupp states that Church enlisted a JMI employee working in Germany to make "disturbing and threatening" phone calls to Kaupp and her family. (Id. ¶ 58).

According to Kaupp, JMI knew of Church's "propensity for drinking and/or substance abuse, [and] for losing self control at client events." (Id. ¶ 89). Kaupp alleges that JMI had received complaints that Church was "unstable and bordering on a

nervous breakdown," (Id. ¶ 83) and that JMI sought counseling

for Church, "to teach him how to behave properly toward actual

and prospective employees and clients." (Id. ¶ 91).

Kaupp contends that JMI is liable for:  (1) negligent

hiring, retention, and supervision (referred to as "negligent

retention"); (2) intentional infliction of emotional distress;

and (3) prima facie tort.  She also seeks a permanent injunction

to enjoin JMI from influencing Church's relationship with Kaupp.

## II.  Discussion

### A.  Legal Standard on Motion to Dismiss

Although Plaintiff mistakenly cites Conley v. Gibson's "no

set of facts" standard, in evaluating a Rule 12(b)(6) motion,

the Court follows Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009),

which holds that only a complaint that states a "plausible"

claim for relief will survive a motion to dismiss. Id. at 1950.

In evaluating the plausibility of a claim, the "reviewing court

[must] draw on its judicial experience and common sense." Id.  A

court must "read the complaint generously, and draw all

inferences in favor of the pleader." Cosmas v. Hassett, 886 F.2d

8, 11 (2d Cir. 1989).  The issue on a 12(b)(6) motion to dismiss

is not whether the plaintiff will ultimately prevail, but

whether she should be entitled to offer evidence on her behalf.

Instead, the court's task is to determine "the legal feasibility

3

of the complaint, not to assay the weight of the evidence which
might be offered in support thereof." Geisler v. Petrocelli, 616
F.2d 636, 639 (2d Cir. 1980).

### B.  Choice of Law

Plaintiff is a resident of New York, and Defendant JMI is
headquartered in Indiana. (Am. Compl. ¶¶ 1, 2).  Where federal
jurisdiction is premised on diversity of citizenship, the
district court applies the choice of law analysis of the forum
state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496
(1941); Gilbert v. Seton Hall Univ., 332 F.3d 105, 109 (2d Cir.
2003).  In New York, the forum state, "the first question in
determining whether to undertake a conflict of laws analysis is
whether there is an actual conflict of laws." Curley v. AMR
Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citing Matter of Allstate
Ins. Co. & Stolarz, 597 N.Y.S.2d 904 (N.Y. Ct. App. 1993)).  If
there is no material conflict, however, the "court is free to
bypass the choice of law analysis and apply New York law." Simon
v. Philip Morris Inc., 124 F. Supp. 2d 46, 70 (E.D.N.Y. 2000)
(citing Curley, 153 F.3d at 12)(noting that "a material conflict
must have a significant possible effect on the outcome of the
trial to bring into play choice of law rules").

The parties do not dispute that the substantive laws of New
York and Indiana with respect to intentional infliction of

4

emotional distress and prima facie tort are the same.  Regarding the negligent retention claim, Defendant asserts that the laws of New York and Indiana diverge, and advocates the application of Indiana law. (Def. Mem. at 6-7).  Plaintiff does not address whether a conflict exists, but proffers that New York substantive law should be applied. (Pl. Mem. at 8-9).

The laws of the two states are as follows:  Indiana has set forth a three-step inquiry to analyze negligent retention, derived from the Restatement (Second) of Torts § 317:  "1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach." Scott v. Retz, 916 N.E.2d 252, 257 (Ind. Ct. App. 2008); see Restatement (Second) of Torts § 317 (noting that the employer is under a duty to control its employee if it "knows or should know of the necessity and opportunity for exercising such control").  In New York, to establish a cause of action based on negligent retention, it must be shown that the defendant "knew or should have known" of its employee's propensity to engage in the conduct that caused the third person's injuries, and that the alleged negligent supervision or retention was a proximate cause of those injuries. Gray v. Schenectady City Sch. Dist., 927 N.Y.S.2d 442 (N.Y. App. Div. 2011).

While the two states present the laws differently, any perceived conflict is semantic; application of either law would render the same effect in this case.  Both states include "proximate cause" as an element, as discussed above.  The states also share the "knows or should have known" standard for duty of care. Compare Beswick v. Bell, 940 N.E.3d 338, 345 (Ind. Ct. App. 2010) (holding that a hospital's duty of care to its patients is breached if it hires a physician "whom the hospital knows or should have known is unqualified.") and Gray, 927 N.Y.S.2d at 445.  Additionally, both states have incorporated the Restatement (Second) of Torts for negligent retention – New York does so by reference while Indiana adopts it explicitly. See Kenneth R. v. Roman Catholic Diocese of Brooklyn, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997) (citing the Restatement (Second) of Torts § 317 to clarify New York's theory of negligent retention).  Therefore, the Court will bypass the choice of law analysis and apply the laws of New York State to evaluate every claim.

### C.  Negligent Retention

As discussed above, the New York standard for negligent retention requires that JMI knew or should have known of Church's alleged propensity for harassment and that retaining him was the proximate cause of the Plaintiff's emotional injury.

6

Plaintiff alleges that because JMI employed Church throughout the time in which he excessively contacted Kaupp (and therefore supplied him with an office and email address), the company advanced Church's harassment of Kaupp. To buttress this claim, Plaintiff points to an email she received from Church that included his professional JMI signature. She further asserts that because JMI hired a counselor to help Church "behave properly," a duty to protect Kaupp arose. Finally, Kaupp proffers that JMI knew or should have known of Church's propensity for harassing and threatening behavior.

These assertions do not give rise to a negligent retention claim. First, Kaupp cannot maintain that Church's possession of a JMI email address and telephone is the reason for his harassment of Kaupp. Indeed, Church used other mediums to effect his stalking, such as his personal email and telephone. Second, hiring a counselor to help Church in his business relations cannot conceivably trigger a duty for JMI to direct, counsel, or otherwise interfere with Church's personal life.

Finally, Kaupp's allegation that JMI should have known about Church's behavior does not satisfy the causation prong of negligent retention. Kaupp has not alleged that Church would not have threatened and harassed her were JMI's offices not available to him. While Church's employment with JMI

7

facilitated his introduction to Kaupp, JMI did not advance Church's personal relationship with Kaupp, nor did Church's harassment arise out of JMI's conduct.  Therefore, JMI cannot be expected to prevent Church's contact with Kaupp.  <u>See Detone v. Bullit Courier Serv., Inc.</u>, 528 N.Y.S.2d 575, 576 (N.Y. Ct. App. 1988) ("The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees.").

Almost every case where a New York court has recognized a negligent retention claim involved significant physical injury to the plaintiff.  <u>Brown</u>, 834 F. Supp. at 105 (dismissing plaintiff's negligent retention claim on the grounds that "[p]laintiff does not allege that defendants assaulted her or caused her personal injury.").  In this case, Kaupp has not alleged physical injury, and therefore cannot establish a claim for negligent retention.

The cases Plaintiff cites in support of her negligent retention claim are inapposite, and do not change the above analysis.  Specifically, Plaintiff misplaces her reliance on <u>Struebel v. Fladd</u>, 905 N.Y.S.2d 732 (N.Y. Ct. App. 2010), for the proposition that a party in possession of premises must

control the conduct of third persons on that premises.  Fladd,
however, did not address harassment by a company's employee, but
rather a guardian's negligent supervision of a child who was
gravely injured at the guardian's home.  Id.

### D.   Intentional Infliction of Emotional Distress

To assert a claim for intentional infliction of emotional
distress, defendant's conduct must be "so outrageous in
character, and so extreme in degree, as to go beyond all
possible grounds of decency, and to be regarded as atrocious,
and utterly intolerable in a civilized society."  Fischer v.
Maloney, 402 N.Y.S.2d 991, 992-93 (N.Y. Ct. App. 1973) (quoting
Restatement (Second) of Torts § 46(1)).  New York courts follow
the Restatement (Second) of Torts' requirements for an
intentional infliction of emotional distress claim: (1) extreme
and outrageous conduct; (2) intent to cause, or disregard of a
substantial probability of causing, severe emotional distress;
(3) a causal connection between the conduct and the injury; and
(4) severe emotional distress.  Mohamed v. Marriott Int'l., Inc.,
905 F. Supp. 141, 157 (S.D.N.Y. 1995); Howell v. New York Post
Co., Inc., 596 N.Y.S.2d 350, 353 (N.Y. Ct. App. 1993).

New York courts continually advise that the standard for
intentional infliction of emotional distress is difficult to
satisfy.  According to the New York Court of Appeals, "of the

9

intentional infliction of emotional distress claims considered by this court, every one has failed because the alleged conduct was not sufficiently outrageous." Id. at 353.

Here, Defendant's conduct does not meet the strict standard required for intentional infliction of emotional distress. Plaintiff has alleged that JMI knew of Church's threats and harassment because the company sought business counseling for Church to address his erratic behavior at office parties, and viewed his JMI emails.  Such knowledge does not meet the strict standard for outrageous conduct.  Moreover, even if JMI's actions – including giving Church an office, introducing him to Kaupp, and providing counseling for Church after learning of his problems – were sufficiently outrageous, causation is an insurmountable obstacle for Plaintiff.  As discussed above, JMI's conduct has not been alleged as the reason for Church's harassment of Kaupp.

### E.  Prima Facie Tort

New York State law requirements for a prima facie tort are: "(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990).  "The touchstone is 'disinterested malevolence,' meaning that the plaintiff cannot

10

recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." Id.

Kaupp does not allege or demonstrate that JMI harbored any intent to injure her.  Because JMI's conduct does not involve any intentional harm, as discussed in conjunction with the intentional infliction of emotional distress claim, above, the first element of a prima facie tort – intentional infliction of harm – is not met.  The Court need not go any further in its inquiry.

### F. Permanent Injunction

Permanent injunction is warranted where a party has succeeded on the merits and can establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (citing Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)).

Plaintiff has not demonstrated any possibility of success on the merits, for the reasons discussed above.  Therefore, she is not entitled to a permanent injunction against JMI.

## III. Conclusion

Defendant's motion to dismiss the Second Amended Complaint is granted in all respects.

**SO ORDERED.**

Dated:     New York, New York

           September 19, 2011

                                    JOHN F. KEENAN

                           United States District Judge